M. A. MARTIN v. JOHN BORGMAN, *et al.*

1. SECTION 174, CH. 81 OF GEN. STAT., *Construed.* Under the terms of § 174, ch. 81, Gen. Stat., 812, the obligors upon the official bond of a justice of the peace, written in the form provided by § 19, ch. 110, Gen. Stat., 1085, are liable for any neglect of duty or any illegal proceedings on the part of a special constable appointed by the justice giving such undertaking.

2. ———— *Said Section is Valid.* Section 174, ch. 81, Gen. Stat., 812, is not in conflict with § 16, article 2 of the state constitution.

*Error from Washington District Court.*

ACTION brought by *Martin* against *John Borgman*, a justice of the peace, and E. H. Prall and Henry Hellman, the sureties on his official bond, for the alleged illegal proceedings of a special constable appointed by said justice. At the April Term, 1877, of the district court, the defendants demurred to plaintiff's petition, which demurrer was sustained, and *Martin* brings the ruling here for review.

*J. W. Rector*, and *A. E. Parks*, for plaintiff in error:

The only points urged by the defendants, are: First, that the breach assigned is broader than the condition of the bond; and second, that if the first point be not well taken, in view of § 174 of ch. 81 of Gen. Stat., then that said § 174 is unconstitutional, as embracing a subject not clearly expressed in the title of the bill.

1. The statute prescribes the form and condition of a justice's bond (§ 19, ch. 110, Gen. Stat.), and the bond in question conforms to the statute. Said §§ 19 and 174 were passed in 1858, and have been in force in the same connection and under the same titles ever since. Said § 174, ch. 81, determines the nature and extent of the bond, and makes the parties liable on it for illegal acts of special constables. We need not cite authorities in support of the proposition that the law in force when the contract is made, and pertaining to the subject-matter thereof, is necessarily referred to and forms a part of the contract, and fixes the rights and obligations growing out of it. Therefore, if said § 174 is valid, then when said parties executed said bond they thereby bound themselves to answer for the illegal acts of any special constable appointed by said justice as positively and completely as if the letter of the bond had contained an express condition to that effect. Hence the rule and authorities cited by defendants, to the effect that sureties are bound only by what is nominated in the bond, and that the law will not make for parties a contract other than that which they have made for themselves, can have no application to cases like this, where the law fixes the form of the bond and the prescribed form is followed, and where there is a defining or construing statute fixing the extent and effect of the bond.

2. The second question is, whether said § 174 of ch. 81 of the Gen. Stat. is in conflict with § 16 of art. 2 of the state constitution. This § 174 is found in art. 14 of ch. 81 of the General Statutes of 1868, which article relates to constables. Constables are officers in justices' courts who execute their

process, and hence said chapter may properly embrace said article relating to constables. And if so, then said article may embrace anything properly pertaining to the powers and duties of constables. Section 172 of said article provides for the appointment and qualification of special constables. Section 173 defines their powers to be the same as other constables. Then follows § 174, which says who shall be liable for the illegal acts of special constables. A regular constable is a township officer, and hence we look for his liability to the act on townships and township officers, which creates his office. But not so as to a special constable. He is not a township officer. He is the mere creature of an emergency which may arise, in the course of civil proceedings before justices, namely, the disability of the regular constable. Hence said code of civil procedure before justices is the only proper and appropriate place for provisions as to the appointment, qualification, powers and liability of special constables. When we find the only law which relates to their creation, qualification, powers and duties, and the only part of the statute which could properly refer to them at all, we then naturally look in the same connection for some further provision as to accountability for their acts. It is proper to incorporate in an act all provisions essential to carry out the object of the act, and to provide for any contingency that may arise by reason of the new state of affairs produced by the act itself. (13 Mich. 481; 2 Iowa, 480; 26 Iowa, 340.) And all of said provisions as to special constables are such. It cannot be said that § 174 is foreign to the general subject of the act; that said provisions are incongruous, and that there is no connection or relation between them. But the reverse is true. The constitution does not mean that the title shall contain a digest or abstract of the act; or that each thought or step toward the accomplishment of an end or object should be embodied in a separate act. The unity of object is to be looked for in the ultimate end, and not in the details or steps leading to that end. (2 Iowa, 280.)

*T. J. Humes*, for defendants in error:

The demurrer to the petition of plaintiff was properly sustained, and especially so as to Prall and Hellman, the sureties on the bond. They are mere sureties, and as such may demand to be brought strictly within the terms of the obligation, before they are charged. This action was against them as sureties, and a recovery can therefore only be had against them strictly upon the contract into which as such sureties they had so entered. The sureties upon the bond of a justice of the peace, being in no wise liable for the illegal acts of a constable or other ministerial officer, ought not in equity, and cannot in law, be held for the illegal acts of the special constable appointed by the justice of the peace, except by force of the obligation, as clearly expressed by the terms of their bond. (5 Ohio, 207; 7 Ohio, 573; 17 Ohio, 554; 20 Ohio, 93; 9 Ohio St. 21, and cases cited.)

There is no ambiguity or uncertainty about the obligation of the sureties of Borgman. The true meaning of the parties is expressed in their bond, and their liability cannot be extended by implication or otherwise. (20 Ohio, 97.)

It is claimed that § 174, ch. 81, Gen. Stat., being in force at the time of the execution of the bond, it entered into and became a part of the sureties' undertaking; and, in addition to their express agreement to become responsible for the money that should come into the justice's hands, they impliedly agreed to vouch for his good judgment in the appointment of special constables. Such a construction, it seems, cannot be sustained, in view of the unbroken current of authorities. But in the event that the court should take a different view of the law, we submit that said § 174, ch. 81, is void, it being in direct conflict with § 16, art. 2 of the state constitution. The act in which said section appears is "An act regulating the jurisdiction and procedure before justices of the peace in civil cases," and the question is whether said § 174, or either of the two preceding sections, is clearly expressed in the title of said act. Who would naturally look

under the title of such an act to find the obligation of the sureties upon the bond of a justice of the peace enlarged upon to the extent claimed by plaintiff in error? And what surety upon the bond of a justice of the peace would expect to find a provision of law extending his liability for the illegal acts of a constable, and to find that he had entered into an obligation so entirely different from what the plain words of his bond import?

The sureties upon the bond of a justice know that he is a township officer, know that from the very nature of his office he receives and disburses money. They turn to ch. 110, Gen. Stat. 1868, "An act relating to townships and township officers," and find the condition of his bond to be, "that he pay on demand to each and every person who may be entitled thereto, all such sums of money as he may become liable to pay, on account of any moneys which may come into his hands by virtue of his office." They turn to § 3 of the same act, and find that the election of a constable is provided for. They turn to § 18, which requires that he give bond for the due, honest and faithful performance of the duties of his office, etc. They turn to article 9 of the same act, and find that § 38 makes him the ministerial officer of the justice's court; authorizes him to execute the civil and criminal process of said court throughout the county, and to appoint a deputy; § 40 requires him to perform any and all acts pertaining to the office of constable. They satisfy themselves that the justice of the peace is in no way responsible for the acts of this officer, and they justly conclude that they are not bound beyond the exact words of their undertaking, and that the same is sufficiently broad and comprehensive of itself to cover all their liability.

The legislature, in § 172 of said ch. 81, attempted to vest in the justice of the peace the authority and power, either in civil or criminal cases (in certain contingencies), to appoint special constables; and we submit as a fair test, whether anyone would reasonably expect to find the subject of appointing special constables in criminal actions under the title of such

an act.   Sec. 173 clothes him with the powers and authority of a full-fledged constable, and gives him the same fees.   Sec. 174 completes the link by making the justice and his sureties responsible for his acts, without regard to whether they have agreed to or not.   These three sections stand isolated and alone as article 14 of said chapter, together with a few sections borrowed from article 9, ch. 110, and re-enacted *verbatim.*

The legislature, it seems, has decided that the subject of §§ 175, 176, 177, 181 and 182 of said article 14, ch. 81, properly belonged under the title of "An act in relation to townships and township officers."   (See §§ 38, 39, 40, 42 and 44, art. 9, ch. 110.)   The subject of said sections it seems is not clearly expressed in the title of said act, but clearly not expressed.   If this be true, said sections should be held unconstitutional, and void. (17 Kas. 627.)

The opinion of the court was delivered by

HORTON, C. J.: The plaintiff in error brought her action against the said John Borgman, a justice of the peace, and the other defendants, the sureties on his official bond, for alleged illegal proceedings of a special constable appointed by said justice.   The defendants in error demurred to the petition, which demurrer was sustained, and plaintiff in error excepted, and brings the ruling here for review.

It is claimed by counsel that as the bond is conditioned that the obligors only "agree to pay on demand to each and every person who may be entitled thereto all such sums of money as the said justice may become liable to pay, on account of any moneys which may come into his hands by virtue of his office," that no action can be maintained thereon for the wrongful acts of a special constable, and especially that the sureties are not liable beyond the letter thereof.

Section 19, ch. 110, Gen. Stat., 1085, prescribes the form and condition of a justice's bond, and the bond in question conforms to that statute.   Section 174, ch. 81, Gen. Stat., 812, provides:

"Such justice shall stand as surety, and shall be in that character liable, he and his sureties, for any neglect of duty or any illegal proceedings on the part of such constable so by him appointed."

These acts *in pari materia*, and relating to the same subject, are to be taken together. To properly construe them, we must ascertain and carry into effect the intention of the legislature. It was certainly the purpose of the law-makers, that having provided for the appointment of special constables by justices of the peace, the justice making such appointment and his sureties should be liable for his neglect of duty and illegal proceedings. Had the provisions of § 174 been inserted in the undertaking at its execution, it would be readily conceded that the justice and his sureties would be liable. As both of these acts were in force at its execution, and as the obligors were bound to know the law, they signed the undertaking with the knowledge that they were bound not only by the written words of the instrument, but also by the terms of § 174, to which the bond was extended. It is the same as if the words of § 174 were written therein before the signing. In other words, the law interpolated in the bond the terms of said § 174; and when the defendants in error executed the bond, they thereby bound themselves to answer for the illegal acts of any special constable appointed by the justices, as completely as if the letter of the bond had contained an express condition to that effect.

Counsel further contends that § 174 is void, on the ground that the subject of appointing special constables, and making the justice and his sureties responsible for their acts, are not properly connected with the subject expressed in the title of ch. 81. We think otherwise. The title of the act is very comprehensive, and the subject of all its sections is included in the title, "An act regulating the jurisdiction and procedure before justices of the peace in civil cases."

The judgment of the district court therefore must be reversed, and the cause remanded with instructions to overrule the demurrer of defendants in error.

All the Justices concurring.